UNION DEPOT, STREET RAILWAY & TRANSFER COMPANY OF STILLWATER *vs.* MARGARET BRUNSWICK and others.

December 11, 1883.

Condemnation—Value of Land at Time of Taking—Necessities of Company.—The question at issue being the value of land proposed to be taken for railway purposes, it was error to admit evidence to show that there was no other route by which the proposed railroad could be built, except across the land in question. The measure of the landowner's compensation is the value of the land at the time it is taken; therefore any supposed future increase of value, by reason of the building of the proposed road, should not be taken into account.

Navigable Streams—Rights of Riparian Owners.—It is the settled law of this state that a riparian owner upon a navigable stream has the fee to low-water mark. But, in addition to this, he has, as incident to his ownership, certain riparian rights, among which are the right to enjoy free communication between his abutting premises and the navigable channel of the stream, to build and maintain suitable piers, landings, or wharves on and in front of his land, and to extend the same therefrom into the stream to the point of navigability even beyond low-water mark, and to this extent exclusively to occupy, for such and like purposes, the bed of the stream, subordinate only to the paramount public right of navigation. These riparian rights are property, and cannot be taken away by the state without paying just compensation therefor.

Same—"Point of Navigability" defined.—The term "point of navigability," as used in this connection, is one whose meaning and application must vary with and depend upon circumstances, such as the nature of the stream and the kind and size of vessels used upon it. It is not to be limited to that point where the stream may be navigable for some purposes at certain stages of water, but must be understood as extending out into the stream sufficiently far to enable a riparian owner to make his abutting property available and useful at any ordinary stage of water, for any kind of navigation for which the stream is used or adapted, provided, of course, he does not obstruct the paramount rights of the public. It is not material whether this is done by building out piers or docks of wood or other material, or by reclaiming the land by filling up with earth out to the requisite depth of water.

Same—Intrusion of Owner on Bed of Stream beyond such Point.— If, however, the riparian owner unlawfully intrudes into the stream be-

yond "the point of navigability," as above defined, and there fills up the bed of the stream, for the sole purpose of extending his posssessions, and so as to obstruct the public right of navigation, this would constitute a purpresture which the public would have a right to abate as a public nuisance. While it would not forfeit his riparian rights as they previously existed, yet he could claim no additional rights on account of it, and when his property is taken for public use he would not be entitled to any additional or greater compensation because of it.

Same—Evidence Considered.—In this case there is no evidence tending to show that the land-owner has made any unlawful intrusion into the stream, and, in the absence of such evidence, the presumption is to the contrary.

Same—Not to be divested by Legislation.—Sp. Laws 1881, (Ex. Sess.) c. 101, by which the legislature assumed to authorize the railroad company to use and occupy with its structures that part of Lake St. Croix, in front of the city of Stillwater, between low-water mark and the centre of the lake, does not and cannot take away the riparian rights of respondents.

The respondents, Margaret Brunswick and others, appealed to the district court for Washington county from an award made in condemnation proceedings instituted by the appellant company. The appeal was tried before *McCluer*, J., and a jury, and respondents had a verdict. This appeal is taken from an order refusing a new trial.

*Marsh & Searles*, for appellant.

*Thompson & Manwaring*, for respondents, cited *Boom Co.* v. *Patterson*, 98 U. S. 403.

MITCHELL, J. 1. The appellant was organized to build and operate a railway from the north line of the city of Stillwater to the south line of the town of Baytown, in Washington county, the principal object of which was to connect by railway the different railroads now terminating in the city of Stillwater, viz., those whose depot is in the lower or southern, and those whose depot is in the upper or northern, end of the city, appellant's road being designed as a transfer road between them. The appellant had instituted proceedings to condemn, for the purposes of their road, the property of respondents. Upon the trial of an appeal from the award of the commissioners, the only matter in issue being the value of the property, the court, under the objection and exception of the railway company, allowed the follow-

ing question to be asked of a witness on the part of the land-owners: "Is there any other route by which connections can be made between the lower depot and the upper depot, except across this land?"—to which the answer was: "Not that I know of. There is a high ledge of rocks extending north of the lower depot, and the upper depot is situated near the lake shore, on a line direct from the lower to the upper depot. The main street is full of business blocks." We think this was error. This evidence did not fairly tend to show the market value of the property, or even its general fitness for railroad purposes. The manifest purpose of it was to show that the railway company had got to have it, and therefore to make their necessities, rather than the market value of the property, the measure of the landowners' compensation. The idea that a jury would naturally get from the admission of such evidence would be that the petitioner should be made to pay all they could afford to pay rather than do without the property, without reference to what it was fairly worth. In determining the actual value, everything, of course, which enhances its present worth should be taken into consideration; not, however, the fact that it is necessary or indispensable for the public use for which it is proposed to be taken.

Suppose the public were laying out a highway of great public importance and necessity, through a narrow ravine, would it be competent to show that this was the only practicable or possible route, so as to make the public pay for the land what they might be willing to pay under compulsion rather than do without the highway? Or suppose a railroad was intended to be built through some canyon or mountain pass, the soil of which was of little or no practical value, would it be competent to permit the owner to show that it furnished the only possible route for the road? We apprehend not. These are extreme cases, but not different in principle from the one under consideration. *Stinson* v. *Chicago, St. P. & M. Ry. Co.*, 27 Minn. 284; *Virginia & T. R. Co.* v. *Elliott*, 5 Nev. 358, (296.) The error in admitting this evidence was afterwards emphasized by the court's refusing to instruct the jury that, in estimating the value of the property, they were not to consider the necessity of the petitioner.

2. On the trial much evidence was introduced as to the value of

the property in consideration of its supposed fitness for various uses, such as that of a site for warehouses, or coal-yards, and the like, which would naturally depend somewhat on its railroad facilities. The court refused the request of the petitioner to instruct the jury: "In estimating the market value of this property, the jury cannot include any increase in value to the same that they may think will accrue to it from the construction of the contemplated railroad." We think the petitioner was fairly entitled to this instruction. It is true, the court did instruct the jury generally that they were to estimate the value of the property as of the time it was taken, but we think that, under the circumstances, the petitioner was entitled to a more specific instruction, to the effect that in estimating this value they were not to include any mere prospective or future increase of value, to result from the completion of the proposed improvement. Of course, any increase in value which the property had already experienced by reason of the commencement or public expectation of the improvement would properly be considered, because that had already affected its present market value. But the purpose of the request was to prevent the jury from taking into account any supposed future increase of value that might thereafter occur.

3. The property in question was situated upon the shore of the navigable waters of Lake St. Croix; hence, the case presents some important questions as to the extent and nature of the rights of the respondents as riparian owners. At common law, the king, as representative of the nation, held in trust for them all navigable waters, and the title to the soil under them. This was a sovereign or prerogative, and not a proprietary right. At the revolution the people of each state became sovereign, and in that capacity held all these navigable waters and the soil under them for their common use, subject only to the rights since surrendered to the general government. *Martin* v. *Waddell*, 16 Pet. 367; *Mumford* v. *Wardell*, 6 Wall. 436. New states, since admitted, have the same rights in these navigable waters as the original states. Upon the admission of a new state, this right of eminent domain in them, which was temporarily held by the United States, passes to the state. The patent from the United States of land on a navigable stream conveys to the patentee no title to the

bed of the stream. This vests in the state as a sovereign right. *Pol-lard* v. *Hagan*, 3 How. 212, 222; *Mumford* v. *Wardell, supra.*

In some states it is held (following the analogy of the common-law rule applicable to waters where the tide ebbs and flows) that a riparian owner on a navigable stream has the fee only to ordinary high water. Such seems to be the tenor of the decisions of the federal courts. But, as it is wholly a matter for the state to determine the extent of its own rights, they follow on this question the decisions of the state courts.

In this state it is the settled doctrine that the riparian owner has the fee to low-water mark. *Schurmeier* v. *St. Paul & Pac. R. Co.,* 10 Minn. 59, (82;) *Brisbine* v. *St. Paul & Sioux City R. Co.,* 23 Minn. 114. But while he only has the fee to low-water mark, he has certain riparian rights incident to the ownership of real estate bordering upon a navigable stream. Among these are the right to enjoy free communication between his abutting premises and the navigable channel of the river, to build and maintain suitable landings, piers, and wharves, on and in front of his land, and to extend the same therefrom into the river to the point of navigability, even beyond low-water mark, and, to this extent, exclusively to occupy for such and like purposes the bed of the stream, subordinate only to the paramount public right of navigation. *Dutton* v. *Strong,* 1 Black, 22; *Railroad Co.* v. *Schurmeir,* 7 Wall. 272; *Yates* v. *Milwaukee,* 10 Wall. 497, *supra; Rippe* v. *Chicago, D. & M. R. Co.,* 23 Minn. 18; *Brisbine* v. *St. Paul & Sioux City R. Co., supra.* These riparian rights are property, and cannot be taken away without paying just compensation therefor. The state could not do it or authorize any one else to do it. *Yates* v. *Milwaukee, supra; Lyon* v. *Fishmongers' Co.,* L. R. 1 App. Cas. 662; *Brisbine* v. *St. Paul & Sioux City R. Co., supra.*

The term "point of navigability," as used in the cases referred to, is not, perhaps, capable of a fixed definition. Its meaning and application must vary with and depend upon circumstances. It is not to be understood in the narrow sense of being limited to that point where the waters of the stream may be navigable for some purposes at certain stages of water. When it said that a riparian owner may construct landings, etc., "to the point of navigability," it must be

understood as giving him the right to do so to the extent necessary to make his abutting property reasonably available at any ordinary stage of water, for any kind of navigation for which the stream is used, and for which it is adapted, provided, of course, it does not obstruct the paramount rights of the public. It must have reference not only to an ordinarily low stage of water, but also the size and kind of vessels which navigate the stream, and the kind of business done upon it. The right would be of little value if it did not permit this to be done. Neither is it material whether, in exercising these riparian rights, the property is made available and useful by building piers and landings of wood or other material, or, as is the usual, and often the only practical, way on the Mississippi and its tributaries, by reclaiming the land by artificial filling with earth out to the requisite depth of water. Whether the fee in this "made land" would be in the state or in the riparian owner—that is, whether it partakes of the nature of the bed of the stream upon which it is made, or of the shore to which it is added—may be a question of speculative interest, but it is not one of any practical importance. If the fee be in the riparian owner, yet, of course, it must be a qualified fee; that is, subject to the paramount right of public navigation. But if it be in the state, the riparian owner still has, subject to this same public right, the exclusive right of possession and the entire beneficial interest. Hence, the determination of the question one way or the other would not affect the value of the riparian owner's interest in the property, or the amount of compensation he is entitled to.

Suppose, however, a riparian owner has unlawfully intruded into the water beyond the point of navigability, as above defined, and filled up the bed of the stream beyond that point, for the sole purpose of extending his possessions, and so as to obstruct and interfere with the public right of navigation. This would constitute a purpresture. The public would have a right to abate it as a public nuisance. It would give no rights to the person who made it. It would not forfeit or destroy his riparian rights as they existed before, but he could claim no additional rights on account of it. When it is proposed to take his property for public use by the exercise of eminent domain, he can claim no additional compensation by reason of it. When con-

demned or taken, the corporation which acquired it would presumably have to remove it,—at least, there is no presumption that it would be allowed to remain,—and therefore there is no reason why the party condemning the property should pay more for it on account of his unlawful encroachment upon public rights. The mere chance that it might be allowed to remain, cannot be made the basis of compensation to the person who made it.

In the present case, while there is evidence tending to prove that a part of these premises is "made land" situate beyond the original low-water mark, made partly by natural alluvions or washings from the neighboring shore, and partly by artificial fillings, yet we find nothing in the case tending to show that land has been reclaimed by artificial means beyond the point of navigability, as we have defined that term; and, in the absence of evidence, the presumption is the other way. *Dutton* v. *Strong, supra; Carli* v. *Stillwater, etc., Ry. Co.*, 28 Minn. 373. Hence, by examination of the requests refused, and of the instructions actually given by the court upon questions touching the riparian rights of the respondents, it will be seen that, although they may not in all respects conform to the views we have expressed, yet, under the evidence, they involved no error prejudicial to the appellant.

It also follows that the act of the legislature (Sp. Laws 1881, (Ex. Sess.) c. 101,) by which they assumed to authorize the appellant, by and with the consent of the city of Stillwater, to use and occupy with its structures that part of Lake St. Croix in front of the city of Stillwater between low-water mark and the centre of the lake, cannot affect the rights of the respondents as riparian owners, and hence cuts no figure in this case.

Whether, in view of the fact that the rights of the state to the stream and its bed are sovereign and not proprietary, and are held by it in trust for the public as a highway, and the further fact that congress has, in the act authorizing a state government, expressly provided that the Mississippi river and the waters leading into the same shall be common highways and forever free to the inhabitants of the state, and all other citizens of the United States, the legislature has the power to divert the bed of the St. Croix from the trust for which

it was vested in the state, and destroy the public use of it as a public· highway, is a question not here involved and which we do not con-· sider. It is sufficient to say that they cannot by any such grant impair or take away the riparian rights of the respondents without compensation. But, for the errors occurring at the trial, already pointed out, the order appealed from must be reversed, and a new· trial ordered.

Ordered accordingly.