ANDREAS M. MILLER *vs.* LUTHER MENDENHALL.

April 3, 1890.

**Navigable Waters—Ownership of Bed.**—The state holds the title to the soil in navigable waters to low-water mark in trust for the people, and chiefly for the protection of the right of navigation.

**Same—Riparian Owners—Right to Fill to Point of Navigability.**— The riparian owner is entitled to fill in and make improvements in the shallow waters in front of his land to the line of navigability, and such improvements in aid of navigation are recognized as a public as well as private benefit. These rights pertain to the use and occupancy of the soil below low-water mark, and are valuable property rights, and the exercise thereof, though subject to state regulation, can only be interfered with by the state for public purposes.

**Same—Effect of Establishing Dock Line.**—The establishment of a dock or harbor line, in pursuance of legislative authority, is to be considered as giving to the owners of the upland the privilege of filling in and building out to such line.

Same—Agreements between Riparian Owners — Grants of Riparian Rights within Dock Line.—Where the owners of upland, bordering upon the Bay of Superior, in this state, after the establishment of the dock line, adopted a survey and plan of improvement for the use and occupation to such line of the submerged land abreast of the upland owned by them, in connection with the navigation of the lake, *held,* that they might not only possess, occupy, and improve the same themselves, in connection with the dry land, but might concede to other parties the same rights within the dock line, and might, by the appropriate covenants and stipulations in the deeds to their grantees of the upland, and of sites used or to be used and improved under low-water mark, obligate each and all to respect and recognize the validity of such grants made in conformity with the general plan of improvement of the premises within the dock line, all such grantees thus becoming parties thereto; and in such case a court of equity will not interpose in favor of a grantee of the upland to set aside prior deeds to grantees of sites in the submerged land.

Appeal by plaintiff from an order of the district court for St. Louis county, *Ensign,* J., presiding, sustaining a demurrer to the complaint. The substance of the complaint is stated in the opinion. The prayer for relief is (1) that the conveyance from the Duluth Improvement Co. to defendant be decreed to be invalid; (2) that the cloud cast by that conveyance on plaintiff's title to the westerly half of block 27 be removed, and (3) for general relief.

*Mahon & Howard,* for appellant.

*Walter Ayers,* for respondent.

VANDERBURGH, J. This case involves the consideration of the riparian rights of the owners of lands abutting upon the Duluth harbor or Bay of Superior, in the shoals or land covered by water between low-water mark and the deep or navigable waters, and within the dock or harbor line established by the authority of the legislature. These waters are within the jurisdiction of the state and federal governments, and the state holds the title to low-water mark in its sovereign capacity, in trust for the people, for the purpose chiefly of protecting the rights of navigation. But, though the title is nominally in the state, the common right of the people is limited to what is of public use for the purposes of navigation and fishery; and the riparian owners are per-

mitted to enjoy the remaining rights and privileges in the soil under water beyond their strict boundary lines, after conceding to the state all the public rights. Gould, Waters, § 168. The right of access and communication with the navigable waters, which pertain peculiarly to the ownership of the upland, in order to be available and of practicable use, necessarily includes the right to fill in and to build wharves and other structures in the shallow water in front of such land, and below low-water mark, and the exercise of such rights, though subject to state regulation, can only be interfered with for public purposes; and such improvements are encouraged because they are in the general interest of navigation and commerce, and are a public as well as a private benefit. In *Dutton* v. *Strong,* 1 Black, 23, 32, it is said that, "wherever the water is too shoal to be navigable, there is the same necessity for such erections for lake navigation as in the bays and arms of the sea; and where that necessity exists, it is difficult to see any reason for denying to the adjacent owner the right to supply it." And in *Yates* v. *Milwaukee,* 10 Wall. 497, it is held broadly that these riparian privileges are to be treated as valuable property rights, which cannot be taken or interfered with for public use without compensation. *Union Depot, etc., Co.* v. *Brunswick,* 31 Minn. 297, (17 N. W. Rep. 626.) And if a stranger makes a filling or an obstruction in the waters in front of his land, the owner of the adjacent upland may enjoin its continuance, or recover in trespass, if not in ejectment.

In the case before us the complaint shows that a corporation known as the "Duluth Improvement Company" was the owner of a large tract of land bordering upon the waters of Duluth harbor, which communicates with Lake Superior, and is navigable for large boats and vessels. In front of this land, and for a considerable distance into the bay, the water is shallow and not navigable; and, in pursuance of legislative authority, a dock or harbor line had been duly established by the city of Duluth, extending in front of, and at a distance of a thousand feet or more from, the low-water mark on the tract of land referred to. Thereafter the Improvement Company caused this land, together with the land in front thereof under water, out to the dock line, to be surveyed and platted into lots and blocks, piers, slips,

v.43m.—7

avenues, and streets, and caused a plat thereof to be duly made and recorded, under the name of the "Bay Front Division of Duluth," and thereafter proceeded to convey divers lots and parcels of the platted land, as well land under water as the dry land, to divers persons, by reference to the recorded plat, and by conveyances of the form set out in the complaint, and containing special covenants and stipulations, as hereinafter mentioned.

The complaint further proceeds as follows: "That on or about the 27th day of June, 1887, the said Duluth Improvement Company sold and conveyed to Luther Mendenhall, defendant herein, by deed duly executed, a copy whereof is hereto annexed and made a part of this complaint, the following described tract or parcel of land, the same being a part of the land hereinabove referred to, to wit: All that part of block twenty-seven (27) in the Bay Front Division of Duluth, first rearrangement, according to the recorded plat thereof, that lies easterly of a line through said block, parallel with and at equal distances from the lines dividing said block from block twenty-six (26) and from block twenty-eight, (28,) in said division. That said Duluth Improvement Company, on or about the 30th day of July, 1887, sold and conveyed to plaintiff, by deed duly executed, and identical in form with and containing the same covenants as the deed to Luther Mendenhall, hereinabove referred to, the following described tract or parcel of land, being a part of the land hereinabove referred to, to wit: All that part of block twenty-seven (27) in the Bay Front Division of Duluth, first rearrangement, according to the recorded plat thereof, that lies westerly of a line through said block parallel with and at equal distance from the lines dividing said block from block twenty-six (26) and from block twenty-eight, (28,) in said division, saving and excepting so much of said tract as lies within one hundred (100) feet of the south-easterly boundary line thereof, which said property so excepted is hereby dedicated for the perpetual use of a slip or water-way for the use and benefit of the owners and occupants of property abutting thereon. Plaintiff further alleges that the greater part of said block 27, so as aforesaid conveyed to plaintiff by the Duluth Improvement Company, consisted of dry land and shore, and that the same extended to the low-water mark on said bay. That

all of that part of said block 27, so as aforesaid conveyed to Luther Mendenhall by said Duluth Improvement Company, lies under the water of the bay, beyond the low-water mark of said bay, and in front of and between that part of said block 27 so as aforesaid conveyed to plaintiff, and said established dock or wharf line upon said Duluth harbor. That the said Luther Mendenhall claims title to the part of said block 27 so as aforesaid conveyed to him by the Duluth Improvement Co. under and by virtue of said deed of conveyance to him, and claims the right to cut off and exclude plaintiff from access to the navigable waters of said bay over and across his part of that block, and denies the right of the plaintiff to dock out or make improvements in front of his part of the block to the established dock line, and claims and asserts that all the riparian rights to which plaintiff would be entitled, as owner of the shore along said harbor, are absolutely cut off and limited by the conveyance so as aforesaid made to him, said Mendenhall, as also by the conveyance made to the plaintiff."

Following the descriptions in the deeds to these parties, and to other grantees of the platted lands above referred to, we find the following clauses, covenants, and stipulations, viz.: "Together with all the hereditaments thereunto belonging, or in any wise appertaining, but subject, nevertheless, to the reservations, exceptions, and conditions of this instrument. And the said party of the first part, for itself, its successors and assigns, does covenant with the said party of the second part, his heirs and assigns, that it has not made, done, executed, or suffered any act or thing whatsoever, whereby the above-described premises, or any part thereof, now are, or at any time hereafter shall or may become, imperilled, charged, or incumbered in any manner whatsoever; and the title to the above-granted premises, against all persons lawfully claiming the same from or under it, the said party of the first part will forever warrant and defend· It being the intention hereby to vest in the said party of the second part, his heirs and assigns, forever, the exclusive right to use, occupy, and enjoy the space covered by the above-mentioned lots, as laid down upon the said recorded plat of said Bay Front Division of Duluth, first rearrangement, and to estop the party of the first part,

its successors and assigns, from having or claiming the use or oc-
cupancy of said space by virtue of riparian ownership or otherwise.
This conveyance is and shall be construed as a contract between the
parties hereto. The character and extent of the premises and the
rights and privileges thereunto appertaining, whether riparian or
other rights, shall be determined solely by reference to the plat of
said Division; and no rights or privileges of any kind shall pass by
this conveyance except such as said plat shows to be appurtenant to
the premises herein conveyed. The said party of the second part
hereby estops himself, his heirs and assigns, from asserting or claim-
ing that the lots or blocks, if any are shown on said plat, between the
premises herein conveyed and the established dock line along the
northerly side of the bay or harbor of Duluth, are not land, and
estops himself from claiming or asserting any rights or privileges
under this grant in any part of the territory covered by said plat,
except such as would solely by reference to said plat vest in him."

The case come here upon appeal from an order sustaining a de-
murrer to the complaint. In connection with the general statement
in respect to the rights of riparian owners already made, we are to
consider the additional fact of the establishment of the dock or har-
bor line, and the effect of the restrictive covenants in the deeds to
the respective parties. The court will take notice of the extensive
commerce and great shipping interests which must be accommodated
in the Duluth harbor, and which will require corresponding facilities
in the way of local improvements, which must be made in great
measure by private enterprise; and in this case we may assume that
the plan adopted by the Duluth Improvement Company, in the sur-
vey and plat of the submerged land in connection with the upland,
was one which was suitable and proper for the improvement and oc-
cupation of the same in the interests of navigation, so as to subserve
the public as well as private interests.

The action of the state, through the legislature, in establishing the
dock lines, is to be construed in connection with the established doc-
trine of riparian rights of which we have spoken, and the practical
use permitted and necessarily made by riparian owners of land un-
der water in front of the dry or upland. In *Aborn* v. *Smith*, 12 R. I.

370, it is said by the court that the owners of the upland are in such cases impliedly permitted to carry the upland forward to the harbor line, so that each owner will occupy the part abreast his own land. In *Gerhard* v. *Bridge Com'rs*, 15 R. I. 334, (5 Atl. Rep. 199,) and in *Engs* v. *Peckham*, 11 R. I. 210, 223, 224, it is held to be a permission and invitation by the state to the riparian owner to fill out and incorporate the flats with his upland to the line. *Eldridge* v. *Cowell*, 4 Cal. 80. In *Fitchburg R. Co.* v. *Boston & Maine R. Co.*, 3 Cush. 58, 71, it appeared that the legislature had established a harbor line for Boston harbor, but prohibited the extension of the existing wharves to the line without legislative permission. Afterwards the legislature passed an act authorizing the owners of certain wharves to extend them out to the line. This act was held to be a grant, and not a mere revocable license, (page 87;) and in *Hamlin* v. *Pairpoint Mfg. Co.*, 141 Mass. 51, 57, (6 N. E. Rep. 531,) a legislative authority to extend wharves to the channel of a river was held equivalent to a grant of a possessory title, if not an absolute interest in the soil. In *Norfolk City* v. *Cooke*, 27 Grat. 430, 438, the court treat the right to use and occupy the land within such lines with wharves, etc., as a qualified proprietary interest in the soil, sufficient to support an action for the possession. *Guy* v. *Hermance*, 5 Cal. 73; *Power* v. *Tazewells*, 25 Grat. 786. But the title of the state is not extinguished by such legislative action *merely*. In this country the generally accepted doctrine is that the *jus privatum* passes to the owner of the adjacent lands, and in this state extends to low-water mark, with the accompanying riparian rights, while the *jus publicum* belongs to the state, which holds the title to the soil under the water as trustee. "The sovereign is trustee for the public, and the use of navigable waters is inalienable." 3 Kent, Comm. 427. See *Com.* v. *Alger*, 7 Cush. 53, 89, 93.

The state is authorized to regulate the exercise of riparian rights in the interests of the public, and may also make concessions to private owners of possessory rights in the soil of navigable waters, the effect of which will be to give them private and exclusive rights equivalent to a grant. Gould, Waters, §§ 138–140. While the *public* right of navigation and fishery may not be extinguished until the waters

are excluded, yet after the submerged land is filled or occupied the riparian owner will have the exclusive right of possession, and the entire beneficial interest; and whether his dominion would be absolute, and his title indefeasible as against the state, is not necessary to inquire. *Union Depot, etc., Co.* v. *Brunswick, supra.* The action of the legislature in establishing a harbor line is to be construed as a regulation of the exercise of the riparian right; it settles the line of navigability, above which the state will not interfere; and is an implied concession of the right to build, possess, and occupy to the established line, which amounts practically to a qualified possessory title. 141 Mass., (6 N. E. Rep.,) *supra.* The importance and substantial character of these rights are recognized by the courts, and there is a growing tendency in different directions to give effect to contracts and grants in respect to riparian occupancy and improvements. *Norfolk City* v. *Cooke,* 27 Grat. 430, 436; *Parker* v. *West Coast Packing Co.,* 17 Or. 510, 515, (21 Pac. Rep. 822.) It is true the right of access and communication with the navigable water belongs exclusively to the riparian owner, except with his permission. But if in the case of a railway corporation he may, for a consideration, concede the right to occupy with its road-bed the land under the shore, and obstruct such communication, by a valid contract, which we presume will not be questioned, why may he not contract with natural persons to grant to them the right of possession and occupancy of building-sites within the dock line for wharves or elevators, for use in connection with navigation, or such other purposes, (the state not objecting,) as the grantees may be advised, with right of way, if need be, over his land, or, as in this case, impliedly over streets laid over the same, as designated in the plat and dedicated to the public use? In many instances, however, such right of entry or easement of passage may be found entirely unnecessary, the occupant having other means of reaching the *locus in quo.* If the riparian owner may make such improvements, and afterwards grant and convey his possessory title, or contract to do so, the courts ought not to stand upon so narrow a distinction as that he may not bind himself by contract that another may have and enjoy the same possessory rights in a particular site or lot which he has in it; for his right is

not a mere revocable license, though held in subordination to the public interest, and subject to some restraint for the general good as other property may be, though differently situated. *Com.* v. *Alger,* 7 Cush. 53, 95.

There can be no doubt, we think, that a lease of such property would be operative between the parties, and a subsequent purchaser of the upland, with notice and expressly subject thereto, would also be bound to respect the lessee's rights. In reference to a lease of a mill-site in the bed of the Mississippi river, (at a place not navigable,) this court say in *St. Anthony Falls Water-Power Co.* v. *Morrison,* 12 Minn. 162, (249, 254,) "It is not for a private individual, under a pretence of vindicating the abstract rights of the public, to set up the intrusion, in a private and civil action, for the purpose of repudiating his own solemn contract obligations."

In this case the respondent does not find it necessary to question the correctness of the decision in the case of *Lake Superior Land Co.* v. *Emerson,* 38 Minn. 406, (38 N. W. Rep. 200,) because there the grantor simply undertook to convey a strict legal title, which until the land was reclaimed could not be the subject of transfer, and we are not called on to distinguish that case. But this case is rested upon the contract of the parties, incorporated in the several deeds, in which it will be seen the grantor covenants that the grantees and their assigns "shall have the exclusive right to use, occupy, and enjoy the space covered by the lots" as described in the deed, and as identified by the plat, and covenants "to estop the company and its assigns from having or claiming the use and occupancy of said space by virtue of riparian ownership or otherwise." Here there is an express waiver and concession of the grantor's riparian rights in the premises, and consent to the use and occupancy thereof, so as to cut off its access and communication with deep water, except in accordance with the general plan of improvement indicated by the plat. And this is also made a part of *plaintiff's contract,* and undoubtedly entered into and affected the consideration of the deed to him. He thereby made himself a party to the general plan and arrangement for the improvement and disposition of the property, in which there was nothing unlawful. He

took with notice of defendant's deed. We see no reason why he should be relieved from the legitimate operation of these covenants, or why a court of equity should interpose to cancel or declare null and void the defendant's deed, in order to give the plaintiff rights he has expressly agreed to waive.

Order affirmed.