## HALL et al. v. HOBART.

(Circuit Court of Appeals, Eighth Circuit.   April 9, 1911.)

No. 3,325.

1. NAVIGABLE WATERS (§ 36*)—LANDS UNDER WATER—TITLE OF STATE.
   Under the law of Minnesota the state has no proprietary title to the
   bed of the Mississippi river or other navigable stream or lake below low-
   water mark, but holds the title in its sovereign capacity in trust for the
   public, to protect the right of free navigation.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 184;
   Dec. Dig. § 36.*]

2. NAVIGABLE WATERS (§ 36*)—RIPARIAN RIGHTS—LANDS BEYOND LOW-
   WATER MARK.
   Under the law of Minnesota a riparian owner, under a government pat-
   ent, of land bounding on a stream navigable in fact, as the Mississippi
   river, takes title to the stream only, at furthest to low-water mark, but
   has the right of possession and use of the bed of the stream between low-
   water mark and the navigable channel, including any island or other ac-
   cretion formed on such bed, subject only to such use, control, or regula-
   tion as the state may make of it in the exercise of its sovereign power,
   for protecting or improving the public right of navigation.
   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 185;
   Dec. Dig. § 36.*]

3. ESTOPPEL (§ 93*)—EQUITABLE ESTOPPEL—ACQUIESCENCE.
   An owner of land bounded by the Mississippi river, who served notice
   on a city of her claim to an island in the river in front of her shore line,
   was not estopped to maintain an action for its recovery because the
   city, before suit, but after such notice, had expended a large sum in
   making improvements thereon.
   [Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 93.*]

4. EJECTMENT (§ 11*)—TITLE TO SUPPORT—POSSESSORY RIGHT.
   Ejectment will lie by a riparian owner on a navigable stream to recover
   possession from an adverse claimant of an island formed by accretion
   in front of his shore line, although the naked title to the bed of the
   stream where it was formed is in the state, and plaintiff's right of pos-
   session is subject to any proper exercise of the sovereign power of the
   state in aid of navigation.
   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 42–46; Dec.
   Dig. § 11.*]

In Error to the Circuit Court of the United States for the District
of Minnesota.

Action at law by Corinna L. Hobart against P. M. Hall and the
City of Minneapolis. Judgment (174 Fed. 433) for plaintiff, and de-
fendants bring error. Affirmed.

This was an action of ejectment, instituted by the defendant in error,
Corinna L. Hobart, to recover possession of a lot of ground fronting on the
Mississippi river, commonly known as "Boom Landing," and the accretions
and rights appertaining thereto, including part of an island which arose from
the bed of the river opposite to it, known as "Hall's Island." Her remote
grantor acquired the lot by patent from the United States dated March 24,
1849, in which it was bounded on the southwest by the Mississippi river.
The defendant the city of Minneapolis claimed the island through mesne
conveyances from the state of Minnesota, which asserted title to it by rea-
son of its ownership of the bed of the river.   At the trial a jury was waived,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the cause submitted to the court upon the pleadings and proof, and the following controlling facts were found:

"That the Mississippi is and always has been, at and about the point in controversy, a stream of water navigable in fact; * * * that about the year 1875, or a little prior thereto, there began to appear above the surface of the water in the river opposite plaintiff's premises, at several different points, separated from each other by stretches of water, the island, afterwards known as 'Hall's Island,' the title and right to the possession of a portion of which is here in controversy; that when this island first began to appear it was at these several different points above the surface of the water at ordinary low stages thereof, and at ordinary high stages it was entirely submerged; that by gradual deposits of earth and sand and other material from the water of the river the exposed portions of said island grew gradually in area, extent, and height, so that in a few years the detached portions thereof became connected together in one continuous island, which island showed continuously thereafter above the water at all ordinary stages, except extreme high water during the spring freshets; that the growth of said island continued in like manner until the year 1902 [in which year the patent from the state to defendant Hall, hereinafter referred to, was issued], at which time it was more or less covered with willows, brush, and cottonwood trees, and was about 1½ acres in extent; that this island was formed, by gradual deposits on the bed of the river of earth and sand and other material from the water thereof, at and about the line of boom piers which had been placed in the river at a distance of about 200 feet from plaintiff's shore line, and where the water was about 8 or 10 feet deep, which piers had been put in for the purpose of attaching booms thereto to hold and control logs coming down the river; that said island was formed on the east side of the middle thread of the said Mississippi river, and the main navigable channel of said river has since the formation of said island always been on the west side thereof, said island lying between said main navigable channel and said plaintiff's shore line; that the width of the open navigable channel of said river on the west side of said island is about 600 feet and the depth thereof for a large part of said distance is from 10 to 15 feet; that while said island, at the time of its formation as above set forth, was, and ever since has been, separated from the plaintiff's shore line by the water of the river for a distance of from about 75 to about 200 feet, said water, or channel, if it may be called a channel, varying in width at different points between said limits, the bottom of said channel has been gradually filling up with earth and sand and other material from the water of the river, so that the depth of the water therein was at times of ordinary low water, in the year 1902, and for some years prior thereto, only about 2 feet at any point from the shore of the island to the shore of the main land at the shallowest part thereof, and about from 3 to 5 or 6 feet at the deepest part thereof, and in the year 1908 only from about 1½ to about 2 feet at the shallowest part, and from about 3 to 4 feet at the deepest part, except where the same had been artificially deepened; * * * that the said channel between said island and the plaintiff's said premises on the east shore of said river has, since the formation of said island until the year 1905, been used at all seasons of the year, except when covered with ice, at all ordinary stages of water, for transporting large quantities of pine and other logs to the several sawmills located upon said channel and upon the east bank of the Mississippi river, it being necessary at times of extremely low water to scrape the channel to permit the free passage of such logs."

There was a further finding to the effect that Hall, the original patentee from the state of Minnesota, and who was at the time of the trial the officer of the city of Minneapolis in actual custody of the island, in the year 1906 executed and delivered to the city of Minneapolis a deed purporting to convey the island to the city in trust for "public municipal purposes only," and also a definite finding "that thereafter the defendant city of Minneapolis took possession of said island, and made and constructed large and valuable improvements thereon, using the same as a public park, and the channel on the east side thereof as a public swimming pool in the summer months, and as a public skating rink in the winter months," and also a finding that

before the city had taken possession of the island, and made the improvements thereon, plaintiff caused a written notice to be duly served on the city advising it of her claim to the island.

The trial court found as a conclusion of law from these facts that plaintiff was the owner and entitled to the immediate possession of the lot bounded on the river, and as such "was the beneficial owner, and entitled to the immediate and exclusive possession and use (subject only to the paramount right and title of the state therein, or of the general government, for the purpose of protecting, preserving, and improving the public right of navigation on said river), of all that part of that certain island, known as 'Hall's Island,' in said river, which lies between the shore line of said above-described premises and the middle thread of said river, and between two lines drawn perpendicularly to said thread, one at the northerly and one at the southerly end of the shore line of said premises, and is therefore, as against the defendants herein, entitled to the immediate possession of said portion of said island."

Judgment was afterwards entered accordingly. From that judgment, defendants prosecute error. There is but one assignment of error, stated, however, in different ways, and that is that the facts found by the court are not sufficient to support the judgment.

A. C. Finney and George W. Armstrong (Frank Healy, on the brief), for plaintiffs in error.

George T. Simpson, Atty. Gen., and C. Louis Weeks, Asst. Atty. Gen., for State of Minnesota.

Fred W. Reed, for defendant in error.

Washburn, Bailey & Mitchell and Crassweller, Crassweller & Blu filed brief in answer to brief of the State of Minnesota.

Before SANBORN and ADAMS, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). This being an action of ejectment, plaintiff must recover, if at all, on the strength of her own title, and not on the weakness of the defendants'. She is conceded to have been the owner in fee simple of a lot of ground fronting on the east bank of the Mississippi river, which was originally acquired by patent from the United States, and was therein described as bounded on the southwest by the Mississippi river. While the object of this suit is to recover possession of the lot, with its accretions generally speaking, the chief controversy is over plaintiff's right to the possession of that part of Hall's Island which lies opposite her lot, and between it and the navigable channel of the river. The river, at the place of present inquiry, is conceded to be navigable in fact, and navigability in fact is conceded to be the test of navigability within the meaning of the law governing the relative rights of riparian owners and the state. It is further conceded that these rights, so far as this case is concerned, are to be determined by the laws of the state of Minnesota as interpreted by its highest judicial tribunal. See Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224; Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Lamprey v. State, 52 Minn. 181, 192, 53 N. W. 1139, 18 L. R. A. 670, 38 Am. St. Rep. 541.

What, then, are the rights under the law of Minnesota of a riparian owner, in fee, of a lot of land originally acquired by patent from the United States, and bounded by a navigable river to an island which,

after title to the lot emanated from the government, arose from the bed of the river between the shore line and the main navigable channel of the river? As this island, according to the facts found, arose from the bed of the river as an accretion thereto, its ownership most obviously depends upon the ownership of the bed. This much is conceded.

Primarily the riparian owner's title extends at least to highwater mark. As to this there is no dispute. He has, however, a certain qualified or dependent right to that part of the shore between high and low water mark (In re Minnetonka Lake Improvement Co., 56 Minn. 513, 520, 58 N. W. 295, 45 Am. St. Rep. 494), which need not now be discussed. What his rights are between low-water mark and the middle thread or navigable channel of the river is the controlling and important question for decision; and, as this must be answered by the decisions of the Supreme Court of Minnesota, they have received most careful and critical attention. Judge Wilson, speaking for that court in a similar case (Schurmeier v. St. Paul & Pacific R. R. Co., 10 Minn. 82 [Gil. 59, 75] 88 Am. Dec. 59), said:

"It is too clear to admit of a reasonable doubt that the river bounds this lot on one side. But, this being admitted, the further question is presented whether the riparian owner takes to high-water or low-water mark, or to the middle thread of the stream. At common law, grants of land bounded on rivers above tide water carry the exclusive right and title of the grantee to the middle thread of the stream, * * * except that rivers navigable in fact are public highways, and the riparian proprietor holds subject to the public easement. * * * The fact that these rivers are, and must remain, public highways, is not at all inconsistent with the view that riparian owners have the fee of the bed of the stream."

In harmony with the views so expressed, the conclusion was reached that the riparian owner took title in fee to the middle thread of the stream. There was, however, a separate concurring opinion in that case. Berry, Judge, was indisposed to agree to the conclusion of the majority that the riparian lot owner held title to the center of the stream, but said that he "acquired at least an easement in the landing which could not be impaired for public use without compensation." This case went to the Supreme Court (7 Wall. 272, 19 L. Ed. 74), where the conclusion reached by the state court, to the effect that the river itself, and not a meander line, was the west boundary of plaintiff's lot, was concurred in; but the Supreme Court, speaking by Mr. Justice Clifford, said:

"But the better opinion is that proprietors of land bordering on navigable rivers, under titles derived from the United States, hold only to the stream, as the express provision is that all such rivers shall be deemed to be and remain public highways."

After some further discussion the opinion proceeds:

"Viewed in the light of these considerations, the court does not hesitate to decide that Congress, in making a distinction between streams navigable, and those not navigable, intended to provide that the common-law rules of riparian ownership should apply to lands bordering on the latter, but that the title to lands bordering on navigable streams should stop at the stream, and that all such streams should be deemed to be and remain public highways. Although such riparian proprietors are limited to the stream, still they also have the same right to construct suitable landings and wharves,

for the convenience of commerce and navigation. as is accorded riparian proprietors bordering on navigable waters affected by the ebb and flow of the tide."

It was decided that from any point of view the decree of the state court which enjoined a trespass upon Schurmeier's riparian rights was correct.

In St. Paul, S. & T. F. R. Co. v. First Division, etc., R. Co., 26 Minn. 31, 49 N. W. 303, plaintiff claimed that the patentee of land bordering on a stream navigable in fact took title only to the meandered line, or at most to low-water mark. The trial court held that such patentee took title to the middle of the river and directed a verdict for the defendant. The Supreme Court, speaking by Chief Justice Gilfillan, said:

"In the same case [Schurmeier v. St. Paul & Pacific R. Co., 10 Minn. 82 (Gil. 59, 82) 88 Am. Dec. 59] this court held that the common-law rule as to the construction of grants of land bordering on streams is in force in this state, and is applicable to patents or grants of the public lands by the general · government. * * * The Supreme Court of the United States (7 Wall. 272, 19 L. Ed. 74) decided that, under the various acts of Congress providing for the survey and sale of the public lands, the title of the patentee of lands bordering on streams navigable in fact stops at the stream, and that the title to the beds of such streams is reserved to the government."

The Supreme Court, therefore, held that the trial court was wrong in directing a verdict for the defendants.

From the foregoing decisions it appears that the Supreme Court of the state of Minnesota held that a riparian owner upon a stream navigable in fact took actual title to the center of the stream. The Supreme Court of the United States, in contravention of the generally accepted doctrine that the rights of riparian owners were determinable exclusively by the law of the state, differed with the Supreme Court of Minnesota with respect to the ownership of the bare legal title to the bed of the stream, but indicated that the riparian owner was entitled to certain beneficial uses of it.

The nature, character, and extent of these beneficial uses afterwards became the subject of much litigation in Minnesota, and many cases are found in which they were ably discussed and finally determined. These cases have all been thoroughly examined, and, while it might be interesting to analyze them separately, we shall content ourselves by stating somewhat comprehensively what we find them to decide.

[1] In our opinion they establish the following certain and definite propositions: That the patentee of land bordering on the Mississippi river takes title only to the stream, at furthest to low-water mark, leaving the naked legal title to the bed of the stream below low-water mark in the state; that the state takes and holds this title, not as a proprietor, but in its sovereign capacity, for the benefit of and in trust for the people; that it thereby acquires for itself no right of property in the bed of the river, but takes upon itself the obligation of a trustee to guard the right of the public to freely navigate the river; that, while the riparian owner acquires the technical fee at furthest to low-water mark, he has certain rights originating, ex necessitate, in the ownership of the bank, among which are the right

to enjoy free communication between his abutting premises and the navigable channel of the river, to build and maintain suitable landings, piers, and wharves on and in front of his land, and to extend the same therefrom into the river to the point of navigability; that his right to the possession and control of the bed of the river in the assertion and enjoyment of these rights is exclusive as to all persons except the state, and as to it for all purposes, except in so far as it may interfere with free navigation, and possibly with free fishing, and that these rights of the riparian owner are subject to alienation by him separate and apart from the shore land to which they were originally incidental. The following cases we think establish the propositions just stated: Morrill v. St. Anthony Falls Water Power Co., 26 Minn. 222, 2 N. W. 842, 37 Am. Rep. 399; Union Depot, etc., Co. v. Brunswick, 31 Minn. 297, 17 N. W. 626, 47 Am. Rep. 789; Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141, 8 L. R. A. 89, 19 Am. St. Rep. 219; Hanford v. St. Paul & Duluth R. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722; Bradshaw v. Duluth Imperial Mill Co., 52 Minn. 59, 62, 53 N. W. 1066; Lamprey v. State, supra.

For instance, in Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141, 8 L. R. A. 89, 19 Am. St. Rep. 219, it is said:

"These waters are within the jurisdiction of the state and federal governments, and the state holds the title to low-water mark in its sovereign capacity, in trust for the people, for the purpose chiefly of protecting the rights of navigation. But, though the title is nominally in the state, the common right of the people is limited to what is of public use for the purposes of navigation and fishery; and the riparian owners are permitted to enjoy the remaining rights and privileges in the soil under water beyond their strict boundary lines. * * * The right of access and communication with the navigable waters, which pertain peculiarly to the ownership of the upland, in order to be available and of practicable use, necessarily includes the right to fill in and to build wharves and other structures in the shallow water in front of such land, and below low-water mark. * * * While the public right of navigation and fishery may not be extinguished until the waters are excluded, yet after the submerged land is filled or occupied the riparian owner will have the exclusive right of possession, and the entire beneficial interest; and whether his dominion would be absolute, and his title indefeasible as against the state, is not necessary to inquire."

In Hanford v. St. Paul & Duluth R. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722, the court first held that the riparian owner had the exclusive right to occupy with landings, piers and wharves the bed of the stream in front of his shore line out to the point of navigability, and that this right was so incidental to and connected with his ownership of the shore land that it was incapable of separate existence and could not be alienated to another. On a reargument, however, a most exhaustive consideration was given the subject. The main question related to whether the riparian rights could be alienated or severed from the shore land itself so as to exist as separate property from it. In discussing this question the court considered the doctrine of riparian rights ab initio and exhaustively and among other things said:

"In this state the title of the proprietor of lands abutting upon navigable waters extends to low-water mark; the bed of the stream or body of water, below low-water mark, being held by the state, not in the sense of ordinary

absolute proprietorship, but in its sovereign governmental capacity, for common public use. * * * The estate or interest of the riparian owner in the bed of the stream below low-water mark is subject to the right of the public to use the same for the purposes of navigation; but, restricted only by that paramount public right, the riparian owner enjoys valuable proprietary privileges, among which we shall consider particularly the right to the use of the land itself for private purposes. * * * Subject only to the limitation that he shall not interfere with the public right of navigation, he has the unquestionable and *exclusive* right to construct and maintain suitable landings, piers, and wharves into the water, and up to the point of navigability, for his own private use and benefit. * * * The right to encroach upon the shallow water of the lake, by an exclusive appropriation even of the underlying soil, must rest upon the proposition that the riparian owner may make any use of the lake or river opposite his land not inconsistent with the public right. * * * The limit to the private right is imposed by the public right, and the private right exists up to the point beyond which it would be inconsistent with the public right. No one but the riparian proprietor has the right to improve and occupy such premises for private purposes. * * * This right of the riparian proprietor, *even before it has been in any manner exercised* by reclaiming or improving the premises—the right itself to reclaim, improve, or occupy—is a *property right, vested in him, recognized and protected in the law as property.* * * * These peculiar property rights of the riparian owner may constitute, estimated in connection with the riparian land, the chief value of the premises. * * * If the right to occupy and use the premises is transferable *after* they have been improved by the exercise of the legal rights of the riparian proprietor, we see no sufficient reason why his legal right to improve and occupy and use the premises should not be transferable. If it be said that in the one case he has the legal title, and in the other he only has the valuable right of occupancy and improvement, with the power thereby to acquire the legal title, it may be answered that such rights are themselves ordinarily a proper subject of transfer. * * * We have thus considered that the riparian proprietor has the exclusive right—absolute as respects every one but the state, and limited only by the public interests of the state for purposes connected with navigation—to improve, reclaim, and occupy the submerged land, out to the point of navigability, for any private purpose, as he might do if it were his separate estate; that his *right* even though it may never have been exercised, is recognized and protected by the law as *property,* of which he cannot be deprived even by the state without just compensation. * * * From these considerations, as well as from the authorities cited bearing directly upon the question, we think that the quality of alienability should be deemed to belong to this kind of property, as it does to property in general. * * * The rights of no one are affected by allowing the riparian owner to convey away this part of his property as he may his other property. It is only an abstract question whether the right, originating in custom, and having originally attached as an incident to his riparian lands, may now be sold and conveyed, and be enjoyed by the purchaser. * * * We think that we ought to go further, and hold that the riparian right to improve, reclaim, and occupy such premises is transferable."

The learned court then concludes thus:

"We have been thus led to the conclusion that the proposition that the riparian proprietor's peculiar right of occupancy and use of lands beyond the boundary of his ownership in fee is inalienable and incapable of existence, apart from the right of occupancy and use of the adjacent bank, should not be adhered to."

A frank confession is then made that in their former decisions they had not sufficiently considered the peculiar nature, extent, and relation of the private and public rights, respectively, to lands lying between low-water mark and the point of navigability.

[2] We refrain from making further extracts from the decisions of

the Supreme Court of Minnesota, but confidently assert that nothing can be found departing from the doctrine announced in the Miller and Hanford Cases, from which we have so liberally quoted. Our conclusion is that the law of Minnesota, which is our sole guide in this case, conferred upon the riparian owner the right of possession and use of the bed of the stream between her low-water mark and the navigable channel of the river, including, of course, the island and other accretions formed on the bed, subject only to such use, control, or regulation of the island or bed as the state, in the exercise of its sovereign power over them, may from time to time deem necessary in order to adequately maintain or promote the rights of the public to navigate the river.

The space between plaintiff's lot and Hall's Island appears to be in a formative state. The natural sedimentary deposits from the waters of the river have banished the water therefrom, so that it is only 1½ to 2 feet in the shallowest and 3 to 4 feet deep in the deepest part, excepting, however, at places where a channel is artificially kept open to permit the passage of rafts of logs. The general rules of law governing accretions to riparian holdings will probably soon definitely settle the status of this part of the property. At present the plaintiff is entitled to its possession and use, as well as to the possession and use of the island itself, subject to limitations already pointed out.

The facts found by the learned trial judge disclose that the city of Minneapolis, under the supposed authority and sanction of the state, is withholding the possession of the island and the shoal between it and the east shore from the plaintiff, making use of them, not for the purpose of promoting navigation, but for the purposes of a public park, skating rink, and swimming pool for its citizens. This, in our opinion, is an unwarranted use, and in derogation of plaintiff's rights. As long as it is continued, plaintiff is precluded from the exercise of any of her rights, whether she has a present purpose to exercise them or not. Hanford v. St. Paul & Duluth R. Co., supra.

[3] There is no merit in the contention that plaintiff is estopped by her conduct in permitting defendants to expend money in improving the premises in question. She timely warned them, and they proceeded at their peril.

[4] The only question now remaining for consideration is whether the plaintiff in this case is entitled to the remedy in ejectment for the assertion of her rights. Ejectment is a personal action, founded upon a possessory right; and, as we have already decided that plaintiff has the right of possession in question, it necessarily follows that ejectment is her proper remedy for the assertion of that right. It is true the state holds the naked title, but holds it without any proprietary interest, and only in its governmental capacity, as a dry trust for the use of the public in a very limited sphere. As this trust cannot continue beyond the period when the subject of it ceases to be available for the purposes of the trust (Doe, Lessee of Poor, v. Considine, 6 Wall. 458, 471, 18 L. Ed. 869), it is not perceived how it can ever be called into exercise so far as Hall's Island itself is concerned. This

186 F.—28

probably can no longer be utilized for navigation purposes. If it can be invoked to protect navigation on the shoal between the island and plaintiff's shore, it is in effect is only an easement, to which plaintiff's beneficial title and right of exclusive possession is subject. Ejectment lies to recover possession of lands, even if the right of possession is subject to some dominant easement. Blake v. Ham, 53 Me. 430; Thomas v. Hunt, 134 Mo. 392, 35 S. W. 581, 32 L. R. A. 857; Taylor v. Armstrong, 24 Ark. 102, 106; Adams v. Emerson, 6 Pick. (Mass.) 57; Weyl v. Sonoma Valley R. R. Co., 69 Cal. 202, 10 Pac. 510. Especially is this true against an intruder who asserts a right outside of the easement. Westlake v. Koch, 134 N. Y. 58, 31 N. E. 321; Gardiner v. Tisdale, 2 Wis. 153, 60 Am. Dec. 407. Possession, when secured, however, by plaintiff, will necessarily be subject to whatever dominant easement may exist.

The learned trial judge made a most critical and exhaustive examination of the case in the light of the decisions of the Supreme Court of Minnesota, and reached a conclusion that plaintiff, Hobart, was entitled to recover the possession of the premises sued for, subject only to the paramount public right of navigation, and entered a judgment accordingly.

We think this was right, and the judgment is accordingly affirmed.