STATE, BY DOUGLAS M. HEAD, ATTORNEY
GENERAL, v. OSCAR SLOTNESS, EXECUTOR OF
ESTATE OF FRED ROBERT EVENS, AND OTHERS.

185 N. W. (2d) 530.

March 19, 1971—No. 42485.

*Douglas M. Head,* Attorney General, *Eric B. Schultz,* Acting Deputy Attorney General, and *Jerry H. Ketola,* Special Assistant Attorney General, for appellant.

*Bruess, Boyd, Andresen & Sullivan, Burke & McKeon* and *David P. Sullivan,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Peterson, and Rosengren, JJ.

PETERSON, JUSTICE.

A declaratory judgment action was instituted by the state, during the pendency of condemnation proceedings for the acquisition of land for interstate highway purposes, to determine whether the state must pay just compensation to the defendant

condemnee for the taking of his land on the shore of Lake Superior. This appeal is from summary judgment adverse to the state.

The determinative issue is whether a riparian owner of dry upland property on the shore of a navigable lake, assumed for the purposes of summary judgment to have created new dry land out to the point of navigability by artificial land fill, is entitled to just compensation upon a public taking of the new land for highway purposes.

The land involved, owned by defendant Fred Robert Evens,[1] consists of two adjoining parcels of land in St. Louis County, described for purposes of this opinion as Parcels 49 and 49A. Parcel 49 is upland property. Parcel 49A, which more directly is in dispute, is lakeshore property. The *original* shoreline of Lake Superior forms the common boundary line between the two parcels, being the eastern boundary of Parcel 49 and the western boundary of Parcel 49A. The *present* shoreline of Lake Superior constitutes the eastern boundary of Parcel 49A. The state contends that Parcel 49A, from the original shoreline on the west to the present shoreline on the east, was created by artificial filling upon the submerged bed of Lake Superior. There is, by stipulation of the parties, no harbor line in existence which affects the disputed property.

1. The general rule concerning the rights of the owner of riparian land in this state is well settled. The riparian owner's title extends to the low-water mark. State v. Korrer, 127 Minn. 60, 76, 148 N. W. 617, 623, 1095, and cases cited. The state owns the bed of navigable waters below the low-water mark in trust for the people for public uses, which include commercial navigation, the drawing of water for various private and public purposes, recreational activity, and similar water-connected uses. Nelson v. DeLong, 213 Minn. 425, 7 N. W. (2d) 342; State v.

---

[1] Fred Robert Evens died during the pendency of this appeal. Oscar Slotness, as executor of decedent's estate, was ordered substituted for decedent as respondent pursuant to Rule 143.02, Rules of Civil Appellate Procedure.

Korrer, 127 Minn. 60, 148 N. W. 617, 1095; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139; Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141.

The riparian owner, in addition to his rights to the use of navigable waters as a member of the public, has other private rights as an incident to his ownership of the shoreland. His main right—on which other rights depend and which often constitutes the principal value of property so situated—is an exclusive right of access to the water in front of his land. Lamprey v. State, 52 Minn. 181, 197, 53 N. W. 1139, 1142. This right of access is the foundation for the rule that the riparian owner has a right to accretions and relictions in front of his land. Ibid.

The riparian owner may, to facilitate access to the water, build and maintain wharves, piers, landings, and docks on and in front of his land and extend the same into the water, even beyond low-water mark, to the point of navigability. Brisbine v. St. Paul & Sioux City Ry. Co. 23 Minn. 114, 130. He may, for the same reason, improve, reclaim, and occupy the surface of submerged land out to the point of navigability. Carli v. Stillwater St. Ry. & Tr. Co. 28 Minn. 373, 10 N. W. 205.[2]

Riparian rights, however, are held subject to the stated public rights in navigable waters, and the mere exercise by the state of those public rights does not constitute a taking of riparian property. This principle is illustrated by Minneapolis Mill Co. v. St. Paul Water Works, 56 Minn. 485, 58 N. W. 33, in which it was held that a city could properly use a navigable stream for its water supply without paying compensation to a riparian owner who suffered incidental injury. The riparian owner, there,

---

[2] The establishment of a harbor line gives the riparian owner implied authority to fill in and build out to such line. Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141. See, also, Bradshaw v. Duluth Imperial Mill Co. 52 Minn. 59, 53 N. W. 1066; Hanford v. St. Paul & Duluth Ry. Co. 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144; Union Depot St. Ry. & Tr. Co. v. Brunswick, 31 Minn 297, 17 N. W. 626; Brisbine v. St. Paul & Sioux City Ry. Co. 23 Minn. 114.

operated a dam for the purpose of producing electric power and had contended that the city must pay compensation because its water pumping diminished the dam's power-producing capacity.

2. The issue narrows to whether or not the taking of riparian land for highway purposes is one of the public purposes for which the state holds the lake bed in trust for the public. We hold that it is not.

The state concedes that defendant had a riparian owner's right to create new dry land out to the point of navigability, but it contends that in such circumstances he was merely a tenant at sufferance on this new dry land, subject to the state's absolute right to take the land, without compensation, for purposes of constructing a portion of the interstate highway system on land held in trust for the people.

State v. Longyear Holding Co. 224 Minn. 451, 29 N. W. (2d) 657, upon which the state places principal reliance, is not authority for the state's position. Longyear did hold that the state, in the exercise of its trust, could issue mining leases and permit the temporary draining of a lake for purposes of mining the lake bed and that such action did not constitute an illegal alienation by the state of the lake bed held in trust for the people. We will not, however, extend the holding in Longyear beyond the unique situation upon which it was decided.

Authorities involving public improvements in aid of navigation are even less in point. We have held in numerous cases that the state may make improvements in aid of navigation without payment of compensation for its incidental effect upon the rights of riparian owners. Fish v. Chicago G. W. R. Co. 125 Minn. 380, 147 N. W. 431; Heiberg v. Wild Rice Boom Co. 127 Minn. 8, 148 N. W. 517; State ex rel. Anderson v. District Court, 119 Minn. 132, 137 N. W. 298; In re Minnetonka Lake Improvement, 56 Minn. 513, 58 N. W. 295. The United States Supreme Court has held that a state's grant of permission for a riparian owner to create land by artificial fill upon the submerged bed of navigable

waters is preempted by the Federal power to control navigation in furtherance of interstate commerce so that, in such circumstances and to like effect, the United States may remove such land without compensating the riparian owner for injuries sustained. Philadelphia Co. v. Stimson, 223 U. S. 605, 32 S. Ct. 340, 56 L. ed. 570; Union Bridge Co. v. United States, 204 U. S. 364, 27 S. Ct. 367, 51 L. ed. 523. See, also, Greenleaf-Johnson Lbr. Co. v. Garrison, 237 U. S. 251, 35 S. Ct. 551, 59 L. ed. 939; Lewis Blue Point Oyster Cultivation Co. v. Briggs, 229 U. S. 82, 33 S. Ct. 679, 57 L. ed. 1083.

The public ownership of the bed of navigable water in trust for public uses embraces, as a most obvious use, navigation of navigable waters. The construction of a public highway, however, is not remotely connected with navigation or any other water-connected public use. It is a land use and nothing more.

We think that the potential of a contrary holding is not in the public interest. "It is for the interest of the state," as we long ago stated in Hanford v. St. Paul & Duluth R. Co. 43 Minn. 104, 113, 42 N. W. 596, 44 N. W. 1144, 1146, "that such lands, not available for the public purposes for which alone the state exercises authority over them, shall be improved and used for profitable enterprises, rather than that they lie forever waste and unproductive." The state, moreover, by establishing lines of navigability, has impliedly invited riparian owners to reclaim submerged lake beds out to the point of navigability. Lands and structures developed in the bay area of Duluth, enormously important to the economy of Northeastern Minnesota, have been the result of such invitation.

We do not, by this decision, in any way determine the state's power to establish restrictions upon a riparian owner's future improvement or reclamation of the submerged lake bed of navigable waters necessary to the environmental interests of the people in public waters. We hold only that the state may not take

defendant's riparian right in the lawfully created land, for highway purposes, without the payment of just compensation.[3]

Affirmed.

---

[3] Our disposition of the issue makes unnecessary a determination of defendant condemnee's claim that pursuant to L. 1933, c. 164, codified as Minn. St. 508.15, he is deemed to have taken fee simple title to Parcel 49A by reliction or accretion because of pre-1933 decrees of registration to which the state was not made a party. We cannot assume, from the limited facts presented, that any or all of this disputed property was not submerged at the time of those registration proceedings. Without consideration of the basic premise of our decision, moreover, a question might be raised as to whether § 508.15 constituted an unconstitutional alienation of lands held in public trust.